IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-01776-CMA-MEH

GIRLSONGS,
WB MUSIC CORP.,
SONS OF K'OSS MUSIC,
FLYTE TYME TUNES,
EMI APRIL MUSIC INC.,
LIDO MUSIC, INC., and
CONTROVERSY MUSIC,

      Plaintiffs,

v.

609 INDUSTRIES, INC. and
ETHAN D. RUBIN,

      Defendants.
_____

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND JUDGMENT
_____

On December 8, 2008, the Court held a hearing concerning Plaintiffs' Motion for

Default Judgment pursuant to Rule 55(b)(2), Fed. R. Civ. P. The Court has considered

the evidence presented at the hearing, including Plaintiffs' arguments and exhibits and

the testimony of Mr. John Bonnacorso, the Director of Licensing for the Association of

Composers, Authors, and Publishers ("ASCAP"). Based on the foregoing, the Court finds

and concludes as follows:

### FINDINGS OF FACT

1. Plaintiffs filed their Complaint in this action on August 22, 2007. A copy of the

summons and complaint was served on Defendants 609 Industries, Inc and Ethan D.

Rubin on September 17, 2007. The returns of service were filed with the Court on

September 21, 2007.  Because Defendants did not appear, answer, or otherwise

respond by the deadline of October 8, 2007, Plaintiffs moved for entry of default on

December 12, 2007. The Clerk of the Court entered default on December 14, 2007.

Plaintiffs then moved for default judgment on September 19, 2008. On September 24,

2008, the Court granted default judgment on the issue of liability. Thereafter, the Court

scheduled a hearing on the issues of damages and attorneys' fees and costs. That

hearing took place on December 8, 2008.

2. "NASTY GIRL," "PUSH IT," "NASTY," "LET'S GO," and "KISS" (hereinafter

collectively referred to as "the Copyrighted Works") are original works written by Jamie

Starr, Herby Azor, James Harris III, Terry Lewis, Richard Otcasek (a/k/a Ric Ocasek)

and Prince Rogers Nelson (a/k/a Prince), afforded protection and properly registered

under the copyright laws of the United States, 17 U.S.C. §§ 101, *et seq.*

3. Plaintiffs GIRLSONGS, WB MUSIC CORP., SONS OF K'OSS MUSIC, FLYTE

TYME TUNES, EMI APRIL MUSIC INC., LIDO MUSIC, INC., and CONTROVERSY

MUSIC, own the Copyrighted Works.

4. Plaintiffs are all members of ASCAP to which they granted the nonexclusive

right to license nondramatic public performances of the Copyrighted Works.

5. Plaintiffs also granted ASCAP a non-exclusive right to enforce the copyrights in

Plaintiffs' songs, including but not limited to the Copyrighted Works.

6. On behalf of Plaintiffs and its other members, ASCAP licenses thousands of

music users, including radio and television networks, commercial radio, and television

stations, restaurants, nightclubs, and other establishments whose owners desire to

perform lawfully the copyrighted musical compositions in the ASCAP repertory.

7. During the period October 4, 2005 through April 30, 2007 representatives of

ASCAP repeatedly offered Defendants an ASCAP license to perform lawfully the

copyrighted musical compositions in the ASCAP repertory at Defendants' establishment, The Snake Pit.

8. Specifically, during this period, ASCAP representatives contacted Defendants over two dozen times by letters and telephone calls, as part of ASCAP's unavailing efforts to persuade Defendants to obtain a license for The Snake Pit, which would have enabled Defendants to perform lawfully ASCAP's members' copyrighted songs, thereby avoiding this litigation.

9. ASCAP repeatedly advised Defendants that in order to perform lawfully any of the copyrighted musical compositions in the ASCAP repertory at The Snake Pit, permission is required from either ASCAP or the individual copyright owners directly.

10. As found by the Court in its previous order, Defendants committed copyright infringement on the night of November 13-14, 2006 by publicly performing the Copyrighted Works at The Snake Pit. All performances of the Copyrighted Works occurred without a license from ASCAP, or permission obtained from either Plaintiffs or anyone acting on their behalf.

11. Defendants' conduct in causing the Copyrighted Works to be performed on their premises without a license was knowing and deliberate. For over eighteen months before the infringing performances on which this action is based occurred, Defendants knew that The Snake Pit was not licensed to perform copyrighted musical compositions in the ASCAP repertory, and that the unlicensed performances of such music constituted copyright infringement, exposing them to liability and the risk of paying substantial monetary damages.

12. Nevertheless, Defendants deliberately chose to disregard the rights and protections afforded to Plaintiffs under the Copyright Law. They have persistently refused

since at least October 2005, to obtain an ASCAP license for their establishment, despite continuing to perform copyrighted sings in the ASCAP repertory without permission, and despite repeated reminders from ASCAP that unauthorized public performances of copyrighted songs constituted infringements of copyrights.

13. By their persistent refusal to obtain an ASCAP license in response to ASCAP's repeated requests for them to do so, Defendants have thus far "saved" license fees of approximately $3,500 – the license fee amount Defendants would have paid if properly licensed by ASCAP from October 2005 through the end of this year.

## CONCLUSIONS OF LAW

1. ASCAP undertook extensive efforts to inform Defendants of their responsibilities under the Copyright Act and their potential liability. In light of ASCAP's numerous contacts with Defendants about the need for permission to perform publicly copyrighted music, and Defendants' refusal to obtain a license for any performances of music, Defendants' public performance of the Copyrighted Works on November 13-14, 2006 was knowing, deliberate, and willful. *International Korwin Corp. v. Kowalczyk*, 855 F.2d 375, 380 (7th Cir. 1988); *U.S. Songs, Inc. v. Downside Lenox, Inc.*, 771 F. Supp. 1220, 1228 (N.D. Ga. 1991).

2. The Copyright Law, 17 U.S.C. § 502(a), provides in pertinent part: "Any court having jurisdiction of a civil action arising under this title may . . . grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of copyright."

3. Recognizing that plaintiffs in this type of action represent all of ASCAP's members, the courts now routinely enjoin defendants from performing any and all music in the ASCAP repertory. *See Ram's Horn Music v. Foundry Entm't, Inc.*, 1993 Copy. L.

Rep. (CCH) 27,066 (E.D. La. 1992); *Brockman Music v. Miller*, 1990 Copy. L. Rep.

(CCH) 26,602 (W.D. Mich. 1990); *Brockman Music v. Mass Bay Lines, Inc.*, 1988 Copy.

L. Rep., (CCH) 26,269 (D. Mass. 1988); and *Billy Steinberg Music v. Cagney's Pub, Inc.*,

9 U.S.P.Q. 2d 1749 (N.D. Ill. 1988); *Southern Nights Music Co. v. Moses*, 669 F. Supp.

305, 306 (C.D. Cal. 1987). Plaintiffs are entitled to similar relief here.

 4. The Copyright Act, 17 U.S.C. § 504(c)(1), provides in pertinent part: "[T]he

copyright owner may elect . . . to recover, instead of actual damages and profits, an

award of statutory damages for all infringements involved in that action, with respect to

any one work . . . in a sum not less than $750 or more than $30,000 as the Court

considers just."

 5. "The court has wide discretion in determining the amount of statutory damages

to be awarded, constrained only by the specified maxima and minima." *Harris v. Emus

Records Corp.*, 734 F.2d 1329, 1335 (9th Cir.1984); *see also F.W. Woolworth Co. v.

Contemporary Arts, Inc.*, 344 U.S. 228, 231-32 (1952).

 6. In *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, the United States Supreme

Court held that merely awarding plaintiffs damages equal to lost profits does not

sufficiently deter infringements. Thus, courts should formulate a damage award that will

achieve the deterrent purposes served by the statutory damages provision. The

Supreme Court said:

> [A] rule of liability which merely takes away the
> profits from an infringement would offer little
> discouragement to the infringers. It would fall
> short of an effective sanction for enforcement of
> the copyright policy. The statutory rule,
> formulated after long experience, not merely
> compels restitution of profit and reparation for
> injury but also is designed to discourage
> wrongful conduct. The discretion of the court is

wide enough to permit a resort to statutory
damages for such purposes. Even for uninjurious and unprofitable invasions of copyright
the court may if it deems it just, impose a liability within the statutory limits to sanction
and vindicate statutory policy.

*Id.*, 344 U.S at 233.

7. Another court has put it more bluntly: infringers should not be free to "sneer" in
the face of the Copyright Act; courts must put defendants on notice that it costs less to
obey the Copyright Act than to violate it. *International Korwin Corp. v. Kowalczyk*, 665 F.
Supp. 652, 659 (N.D. Ill. 1987), *aff'd*, 855 F.2d 375 (7th Cir. 1988); see also *Flyte Tyme
Tunes v. Miszkiewicz*, 715 F. Supp. 919, 922 (E.D. Wis. 1989) ("a violation of Copyright
Law [is] aserious matter requiring deterrence . . .").

8. Recognizing the important deterrent purpose served by statutory damages, the
courts routinely award as statutory damages in cases such as this amounts that are
between two and three times license fees. *See*, *e.g.*, *Canopy Music, Inc. v. Harbor Cities
Broad., Inc.*, 950 F. Supp. 913, 916-17 (E.D. Wis. 1997) (following entry of default
judgment, statutory damages of $40,000; license fees owed would have been
approximately $23,000); *Bonnyview Music Corp. v. Jones Eastern of the Grand Strand,
Inc.*, 1993 Copy. L. Rep. (CCH) 27,040, 26,129–30 (D.S.C. 1992) (following entry of
default judgment, statutory damages of $105,000; license fees owed would have been
approximately $84,000); *Golden Torch Music Corp. v. Pier III Cafe, Inc.*, 684 F. Supp.
772 (D. Conn. 1988) (following entry of default judgment, statutory damages of $8,000;
license fees owed would have been approximately $1,490). *See also EMI Mills Music,
Inc. v. Empress Hotel, Inc.*, 470 F. Supp. 2d 67, 76 (D.P.R. 2006) (awarding statutory
damages of $15,000 per infringement, totaling $60,000; license fees "saved" were
approximately $18,000); *Odnil Music, Ltd. v. Katharsis LLC*, 2006 Copy. L. Rep. (CCH)

29,222 (E.D. Cal. 2006) (awarding statutory damages of $3,000 per infringement, totaling $12,000; license fees owed were $3,401.71)); *Morganactive Songs, Inc. v. Padgett*, 81 U.S.P.Q. 2d 1433 (M.D. Ga. 2006) (awarding statutory damages of $2,000 per infringement, totaling $14,000; license fees "saved" were $6,837.02); *Halnat Publ'g Co. v. L.A.P.A., Inc.*, 669 F. Supp. 933 (D. Minn. 1987) (on motion for default judgment, statutory damages of $3,750; license fees "saved" would have totaled approximately $1,770); *Coleman v. Payne*, 698 F. Supp. 704 (W.D. Mich. 1988) ($5,000 for each of 10 infringements; license fees "saved" would have totaled approximately $5,400); *Int'l Korwin Corp.*, 855 F.2d at 379 ($1,500 for each of 7 infringements; license fees "saved" would have totaled approximately $3,500); *Nick-O-Val Music Co. v. P.O.S. Radio, Inc.*, 656 F. Supp. 826, 828 (M.D. Fla. 1987) ($2,500 for each of 20 infringements; license fees "saved" would have totaled approximately $22,000); *Rodgers v. Eighty Four Lumber Co.*, 623 F. Supp. 889 (W.D. Pa. 1985) ($2,500 for each of 49 infringements; license fees "saved" would have totaled approximately $77,800); *Music City Music v. Alfa Foods, Ltd.*, 616 F. Supp. 1001, 1003 (D.C. Va. 1985) ($1,500 for each of three (3) infringements; license fees "saved" would have totaled approximately $2,100); *Boz Scaggs Music v. KND Corp.*, 491 F. Supp. 908, 914 (D. Conn. 1980) ($1,000 for each of 23 infringements; license fees "saved" would have totaled approximately $6,000).

9. In this case, because Defendants repeatedly rejected and ignored ASCAP's offers of a license, acted as if they are not subject to the copyright laws, and have continued to perform copyrighted works in the ASCAP repertory, Defendants are knowing, deliberate, and willful infringers.

10. Given Defendants' blatantly willful conduct, an appropriate statutory damages award in this case is $2,000.00 per infringement for a total of $10,000.00, which is less

than three times the license fees "saved" of $3,500 and well within the statutory range of $750 to $30,000 per infringement under 17 U.S.C. § 504(c)(1). This amount should serve as a deterrent to Defendants' further infringing conduct and serve as well the other objectives of the Copyright Law. To award less would reward Defendants for their deliberate failure to comply with the law and send the wrong message to other potential infringers.

11. The Copyright Act provides for the imposition of costs and attorneys' fees in favor of the prevailing party:

> In any civil action under this title, the court in its
> discretion may allow the recovery of full costs
> by or against any party other than the United
> States or an officer thereof. Except as otherwise
> provided by this title, the court may also award
> a reasonable
> attorney's fee to the prevailing party as part of
> the costs.

17 U.S.C. § 505.

12. "Plaintiffs in copyright actions may be awarded attorneys' fees simply by virtue of prevailing in the action: no other precondition need be met, although the fee awarded must be reasonable." *Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*, 886 F.2d 1545, 1556 (9th Cir. 1989). *See also Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994).

13. In *Milene Music, Inc.*, on facts very similar to this case, the Rhode Island District Court concluded that:

> The defendants have deliberately and
> knowingly infringed upon plaintiffs' copyrights;
> and subsequent to such infringement, have
> forced the plaintiffs to engage lawyers and to
> resort to the courts to enforce the proprietary
> interests in the copyrights. The defendants, in

the court's view, have come forward with no justification for their actions, nor any colorable grounds upon which defense or mitigation could be predicted. The Court

believes that this litigation fairly cries out for an award of attorneys' fees.

*Milene Music, Inc. v. Gotauco*, 551 F. Supp. 1288, 1298 (D.R.I. 1982).

14. Here, Defendants knowingly and deliberately infringed upon Plaintiffs' copyrights, refused to obtain permission to perform copyrighted materials, and forced this matter to be litigated. Plaintiffs are therefore entitled to recover reasonable attorneys' fees in the amount of $14,322.

15. In addition, Plaintiffs are entitled to recover costs incurred in this action in the amount of $1,941.99.

16. 28 U.S.C. § 1961 specifies that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." Plaintiffs are entitled to post-judgment interest on the monetary award.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:**

1. Defendants 609 Industries, LLC, and Ethan D. Rubin, and all persons in active concert or participation with one or both of them, are hereby permanently enjoined and restrained:

a. from publicly performing, without a license to do so, the musical compositions in the repertory of ASCAP, including but not limited to the following five copyrighted musical compositions: "NASTY GIRL," "PUSH IT," "NASTY," "LET'S GO," and "KISS."

b. from causing or permitting any of those musical compositions to be publicly performed, without a license to do so, in, at, or by The Snake Pit, or any other business owned, controlled, operated, maintained, or conducted, in whole or in part, directly or indirectly, by one or more of the Defendants;

c. from aiding or abetting the unlicensed public performance of any of those

musical compositions; and

          d. from otherwise infringing the copyright in any of those musical compositions.

      2. Plaintiffs shall recover from Defendants 609 Industries, Inc., and Ethan D. Rubin, jointly and severally, statutory damages in the amount of ten thousand dollars ($10,000.00), which is an award of two thousand dollars ($2,000.00) for each of the five copyrighted musical works infringed at The Snake Pit on November 13-14, 2006.

      3. Plaintiffs also shall recover from Defendants 609 Industries, Inc., and Ethan D. Rubin, jointly and severally, reasonable attorneys' fees in the amount of $14,322.00.

      4. Plaintiffs also shall recover from Defendants 609 Industries, Inc., and Ethan D. Rubin, jointly and severally, costs in the amount of $1,941.99.

      5. Plaintiffs shall further recover from Defendants 609 Industries, Inc., and Ethan D. Rubin, jointly and severally, interest on the aforementioned statutory damages, costs, and attorneys' fees from the date of entry of judgment at the applicable statutory rate.

      DATED: December 23, 2008.

                            BY THE COURT:

                          *Christine M. Arguello*

                          _____
                          Christine M. Arguello
                          United States District Judge